**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JOSEPH ROBINSON,                    *

Plaintiff,                          *

v.                                  *          Civil Action No. PX-22-473

C. BIVENS, *et al.*,                *

Defendants.                         *

                                   ***

**MEMORANDUM OPINION**

Joseph Robinson has filed suit pursuant to 42 U.S.C. § 1983, alleging that Roxbury Correctional Institution (RCI) Warden, C. Bivens and prison medical providers Dr. Masked Choudry[1] and physician assistant, Crystal Jamison, all violated Robinson's constitutional right to be free cruel and unusual punishment by delaying or denying him medical care. ECF No. 1. Warden Bivens moves to dismiss the claims against him while Dr. Choudry and Ms. Jamison move to dismiss the claims or alternatively for summary judgment to be granted in their favor. ECF Nos. 14 & 22. The Court had advised Robinson of his right to respond to the motions (ECF No. 15 & 23) but received nothing from the Plaintiff. The Court has reviewed the pleadings and will resolve the motions without a hearing. Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Defendants' motions are GRANTED.

I.      **Background**

Robinson requires regular treatment in the prison healthcare system's chronic care division to address his high blood pressure, high cholesterol, Hepatitis C, residual effects of deep vein thrombosis, dermatitis, gastrointestinal bleeding, and chronic low back pain. ECF No. 22-3 at 7,

---

[1] The Clerk shall amend the docket to reflect the full and correct name of Defendant.

¶ 16.   On February 2, 2020, while housed at RCI, Robinson lost consciousness.   ECF No. 1 at 2; ECF No. 22-5 at 2.   Medical staff administered CPR and Narcan,[3] and transported him to the emergency room at Meritus Medical Center (MMC).   ECF No. 22-5 at 2-4, 78-109.   At MMC, a CT[4] scan revealed nothing neurologically abnormal.   *Id*. at 83, 104.   Ultimately, Robinson was diagnosed as suffering from "polysubstance overdose, undetermined intent."   *Id*. at 84.   He was returned to RCI on February 3, 2020, in stable condition.   *Id*. at 84.

A few days later, Robinson was saw a nurse during a chronic care visit, complaining that he could not easily lift his feet while walking.   ECF No. 22-5 at 7.   The nurse noted Robinson's history of unsteady gait, his oddly formed leg, and his need for compression stockings.   At a subsequent visit, Robinson admitted to another nurse that the day he passed out, he had drunk jail house wine and smoked K2.   *Id*. at 10.

Medical personnel evaluated Robinson again in March 2020 for complaints of right side weakness and slow speech.   ECF No. 22-5 at 16.   A few weeks later, corrections staff also found Robinson disoriented and struggling to walk.   They escorted him to the medical unit for evaluation.   *Id*. at 20-21.   There, Robinson reported that his right leg tingled, he was having trouble staying upright, and he did not know where he was.   *Id.* at 21.   Robinson also told staff that he had previously suffered a stroke.   Staff observed that Robinson seemed to have left side weakness and

---

[3] Narcan, generically known as naloxone, is used to rapidly reverse an opioid overdose but will otherwise have no effect on an individual who did not consume opioids.   *See* https://nida.nih.gov/publications/drugfacts/naloxone (last visited Jan. 24, 2023).

[4] "A computerized tomography (CT) scan combines a series of X-ray images taken from different angles . . .and uses computer processing to create cross-sectional images (slices) of the bones, blood vessels, and soft tissues inside your body." *See* https://www.mayoclinic.org/tests-procedures/ct-scan/about/pac-20393675#:~:text=A%20computerized%20tomography%20(CT)%20scan,than%20plain%20X%2Drays%20do. (last visited Jan. 24, 2023).

mobility issues, but clinical examination revealed that he suffered from right side weakness.  The on-call physician ordered that Robinson be taken to MMC by ambulance for evaluation.  *Id*. at 22.

At MMC, Robinson received another CT scan and an MRI.[5]  ECF No. 22-5 at 119-20. Again, the findings were unremarkable.  *Id.*  From this, the attending physician concluded that Robinson's unsteady gate had been likely due to neuropathy, but outpatient nerve conduction testing was needed to confirm the diagnosis.  *Id.* at 122.[6]  Robinson returned to the prison the same day.  *Id.* at 124-25, 26.

In April 2020, Dr. Choudry saw Robinson in the chronic care clinic.  ECF No. 22-5 at 44-46.  Dr. Choudry noted that Robinson had tenderness near his spine and moderate pain when he moved.  The doctor also observed Robinson's varicose veins, edema, and stasis dermatitis on his right leg. *Id.* at 44.  Dr. Choudry directed that Robinson's medications be continued, ordered compression stockings for him, and recommended that Robinson regularly perform back stretching exercises.  *Id.*

Robinson attended follow up medical visits in May, June, and July 2020 for his back pain. ECF No. 22-5 at 53-55. Doctors provided him additional analgesic pain medication, back exercises, and advised that he should apply warm wet compresses to the painful areas.  Providers declined Robinson's request for a back brace.  *Id.* at 57.

As part of the prison's chronic care program, Dr. Choudry next examined Robinson on August 7, 2020, November 13, 2020, and March 10, 2021.  ECF No. 22-5 at 59, 61-63, 72-75, 180-85.  Dr. Choudry reviewed previous x-rays and scans and recorded Robinson's complaints of

---

[5] "Magnetic resonance imaging (MRI) is a medical imaging technique that uses a magnetic field and computer generated radio waves to create detailed images of the organs and tissues of your body." *See* https://www.mayoclinic.org/tests-procedures/mri/about/pac-20384768 (last visited Jan. 23, 2023).

[6] Evidently, the COVID-19 pandemic derailed the nerve conduction study.  ECF No. 22-5 at 41.

continued chronic back pain and leg swelling.  Dr. Choudry also renewed Robinson's medications, prescribed a "Salon Pas" transdermal pain relief patch and ordered him a cane.  *Id*. at 72-73; ECF No. 22-3 at ¶ 19; ECF No. 22-5 at 205-07; 304.  Robinson ultimately did not use the Salon Pas patch and instead either gave or sold it to another inmate.  *Id.* at 179.

In May of 2021, Defendant Jamison evaluated Robinson.  She noted his unsteady gait and left foot drop, and so she referred Robinson to podiatry for further evaluation.  ECF No. 22-5 at 195-96.  However, no record suggests that this request was ever approved by the prison healthcare Utilization Management team.  ECF No. 22-3 at 9, ¶ 21.

Defendants Choudry and Jamison again examined Robinson in June, August and September 2021.  ECF No. 22-5 at 197-203, 216-22.  They noted that Robinson's gait was abnormal, and his legs were swollen and tender.  Dr. Choudry renewed Robinson's prescriptions and Jamison ordered blood tests to screen for underlying neurological conditions.  *Id*. at 223.  During the September visit, Robinson reported to Jamison that the pain in his foot and back had increased and that his prescription for Elavil did not offer him relief.  Jamison changed his medications accordingly, in an effort to treat his pain.  *Id*. at 228-29.  At a follow-up visit on November 8, 2021, Robinson reported that he had stopped taking the newly added pain medication, Cymbalta, because he did not like how the medication made him feel.  *Id.* at 234.

At Robinson's December 2021 and January 2022 chronic care visits, medical staff reviewed his conditions, including his foot and back pain and his unsteady gait.  ECF No. 22-5 at 238, 306, 308.  At the January visit, Robinson used his cane to walk, and his voice was described as "soft," but he was able to verbalize his needs to the healthcare providers.  *Id.* at 308.

At his March 2022 visit, Robinson asked Dr. Choudry to prescribe a walker for him.  Dr. Choudry responded that once Robinson was released from segregation, the doctor would review

the request.  ECF No. 22-5 at 336.  By the next month, during Robinson's visit with Jamison, Robinson reported that he was experiencing persistent left side weakness.  ECF No. 22-5 at 346-347, 349.  Robinson found it difficult to rise from a chair, climb steps, or walk even with the use of a cane.  *Id.*  On examination, Jamison noted "moderate varicosities" on Robinson's right leg but that neither leg appeared tender and there was no evidence of a new DVT.  *Id.* at 350.  Jamison did note, however, that Robinson had experienced some muscle wasting of the left leg which appeared consistent with Robinson's limited mobility.  *Id.* at 327.  Jamison ordered follow up blood tests, and that Robinson receive a walker and more physical therapy.  Jamison also renewed the referral to a podiatrist.  *Id.* at 350, 411.

Dr. Choudry next saw Robinson a week later.  They discussed Robinson's history of lower back pain following a car accident in 1990.  ECF No. 22-5 at 352.  Robinson also reported that he had fallen several times over the last few months.  Dr. Choudry, too, observed Robinson's left-side weakness, the left leg muscle wasting, left foot drop, poor balance, and difficulty rising from a chair.  *Id.*  Dr. Choudry assessed Robinson as suffering from chronic pain syndrome, and so altered Robinson's medication, directed a follow-up consultation for pain management as needed, and ordered a consultation with podiatry.  *Id.* at 356-358.  Ultimately, the podiatrist recommended an orthotic brace to address Robinson's left foot drop, however Utilization Management rejected the recommendation in favor of an off-the-shelf brace and medical shoes.  ECF No. 22-3 at 13, ¶ 34.  Thereafter, Robinson was transferred from RCI to Eastern Correctional Institution.  ECF No. 22-4 at 3, ¶ 7.

On February 28, 2022, Robinson filed this lawsuit.  ECF No. 1.  He appears to allege that his February 2020 fainting episode was due to a stroke, not drug use as diagnosed.  The Complaint further alleges that Defendants' delay and denial of necessary treatment for this supposed stroke

violated his right to be free from cruel and unusual punishment as guaranteed under the Eighth Amendment to the United States Constitution.  Dr. Choudry and physician assistant Jamison now move for dismissal or alternative for summary judgment in their favor, asserting that Robinson had been provided constitutionally adequate care.  Warden Bivens separately moves for dismissal, contending that no facts make plausible he had any personal or official involvement in Robinson's medical care.  The Court turns first to Warden Bivens' motion.

## II.    Warden Bivens' Motion to Dismiss

### A.  Standard of Review

When reviewing a motion to dismiss brought pursuant to Federal Rule of Criminal Procedure 12(b)(6), the Court accepts the well-pleaded allegations as true and most favorably to the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'"  *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above a speculative level."  *Twombly*, 550 U.S. at 555.  "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.  Only those questions which

are squarely presented to a court may properly be addressed." (internal citation omitted)).  "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

### B.  Analysis

Warden Bivens principally argues that the Complaint fails to allege sufficient personal involvement in Robinson's medical care to sustain the claim.  The Court agrees.[7]  For constitutional claims brought pursuant to 42 U.S.C. § 1983, a supervisory official cannot be held liable for the acts of his subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff.  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Accordingly, for this claim to survive challenge, some complaint facts must make plausible that (1) the defendant-supervisor had actual or constructive knowledge that the subordinate was engaged in conduct posing a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury that the plaintiff suffered.  *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

The Complaint merely avers that Bivens, as Warden, was the "administrative overseer" of the prison.  ECF No. 1 at 4.  But this alone does not make plausible that Warden Bivens had any involvement in Robinson's care whatsoever.  Nor is it plausible that Bivens, based solely on his

---

[7]The Court declines to reach Bivens' alternative arguments for relief.

role as Warden, would be involved in any material respect such that liability should attach to him. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Additionally, the Complaint does not aver any facts suggesting that the prison engaged in widespread violations of inmates' rights such that any knowledge could be imputed to Bivens.  *Cf. Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse").  Thus, because no facts make plausible liability as to Bivens, the claims against him are dismissed.

### III.    Dr. Choudry and Ms. Jamison's Motion

Defendants Choudry and Jamison move for dismissal or for summary judgment to be granted in their favor.  They have attached to their motion medical records and other evidence for the Court's consideration.  Robinson has been afforded an opportunity to respond, but he has not done so.  Accordingly, Robinson has made no showing that resolving the motion as requested is unwarranted.  Thus, the Court will treat the motion as one seeking summary judgment.  *See* Fed. R. Civ. P. 12(d).

### A.  Standard of Review

 Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### B.  Analysis

The Complaint essentially alleges that Dr. Choudry and physician assistant Jamison denied Robinson constitutionally adequate medical care, thus depriving him of his right to be free from "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To survive summary judgment, the record, viewed most favorably to Robinson, must include some evidence which supports that each defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Id.* at 695; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as "exacting"). Stated otherwise, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto v. Stansberry*, 841 F.3d at 219, 225 (4th Cir. 2016). "[T]he essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v.*

*Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)).

Deliberate indifference specifically requires the plaintiff to show that objectively, he was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need but failed to either provide necessary medical attention. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (internal quotation marks and ellipses omitted).

As to a defendant's "subjective recklessness" in the face of the serious medical condition, "[t]rue subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Where evidence supports the requisite subjective knowledge, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in view of the risk known to the defendant at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000); *see also Jackson*, 775 F.3d at 179. "[N]egligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).

Although clearly Robinson suffered from a serious medical need, no record evidence demonstrates that either Dr. Choudry or physician assistant Jamison acted with deliberate indifference to those needs.   First, no evidence supports that Robinson suffered a stroke in 2020. Thus, any claims tied to lack of appropriate care responsive to a stroke are misplaced.   Second and relatedly, the record viewed most favorably to Robinson reflects that Dr. Choudry and Ms. Jamieson responded reasonably to Robinson's diagnoses, complaints and worsening condition. They, along with other medical staff, regularly and timely evaluated Robinson; prescribed a variety of medications and adjusted those medications in light of Robinson's reports on their effectiveness; ordered diagnostic testing, physical therapy and when appropriate, referred Robinson to specialists in podiatry and pain management.   On this record, no reasonable finder of fact could conclude that either Defendant failed to treat Robinson's afflictions with deliberate indifference.   *See Wright*, 766 F.2d at 849.

The Complaint also specifically avers that Defendants violated Robinson's Eighth amendment rights by denying him physical and speech therapies, a walker, and referral to a podiatrist. ECF No. 1 at 3.   The record, however, reflects that Robinson indeed received a walker and a podiatrist consult.   ECF No. 22-5 at 358 (podiatry referral); ECF No. 22-3 at 13, ¶ 34 (podiatry consult); ECF No. 22-5 at 411 (walker provided).   As for speech therapy, although Robinson may have wanted, and even benefited from, that assistance, his ability to communicate had been sufficient enough such that the denial does not amount to an Eighth Amendment violation.   *See Jackson*, 775 F. 3d at 178; *Scinto*, 841 F.3d at 225.   Accordingly, because no record evidence supports Robinson's Eighth Amendment claim as to Dr. Choudry or physician assistant Robinson, the Court grants summary judgment in their favor.

**IV.    Conclusion**

For the foregoing reasons, the motion to dismiss is granted as to Warden Bivens.  The motion to dismiss, or in the alternative for summary judgment, construed as a motion for summary judgment, is granted as to Dr. Choudry and physician assistant Jamison.

A separate Order follows.


Date:  _1/25/23_____

                                                            /S/
                                            _____
                                            Paula Xinis
                                            United States District Judge